STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **INVESTAR BANK** | **CIVIL ACTION** |
| **VERSUS** | **NO.** |
| **STARNET INSURANCE COMPANY** | **SECTION:** |

**COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, comes Investar Bank, which for its complaint against StarNet Insurance Company, alleges as follows:

**I.   PARTIES, JURISDICTION, AND VENUE**

1.

Plaintiff, Investar Bank, is a Louisiana state-chartered banking corporation with its principal place of business located in Baton Rouge, Louisiana.

2.

Defendant, StarNet Insurance Company ("StarNet"), is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Greenwich, Connecticut. StarNet is an admitted insurer authorized to conduct business within the State of Louisiana.

3.

The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.

Venue in the Middle District of Louisiana is proper under 28 U.S.C. § 1391(b)(1) because StarNet is subject to this Court's personal jurisdiction with respect to the claims brought against it in this matter by Investar, making it a resident of the Middle District of Louisiana for venue purposes, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Investar Bank's claims against StarNet occurred within the Middle District of Louisiana.

## II.   FACTUAL BACKGROUND

### A.   Lending Relationship Between The Highlands Bank and W Resources, LLC

5.

The Highlands Bank ("Highlands"), a Louisiana state-chartered bank that merged into Investar Bank effective December 1, 2017 as more fully described below, is the payee under two promissory notes (the "Notes") executed by W Resources, LLC, a Louisiana limited liability company. The Notes are both dated December 23, 2014, one in the original principal amount of $8,917,349 with a stated maturity date of December 23, 2019, and the other in the original principal amount of $7,824,651 with a stated maturity date of December 23, 2015, eventually extended until November 23, 2017. Copies of the Notes and, with respect to the second note, the modifications extending its maturity, are attached as Exhibits 1 and 2.

6.

Investar Bank is the holder of the Notes as successor-by-merger to Highlands.

7.

Both Notes are now in default. A copy of a default notice sent by counsel for Investar Bank to W Resources on March 12, 2018 is attached as Exhibit 3.

8.

The Notes are secured by pledges of a series of four bearer notes executed at various times between 2007 and 2014 by W Resources. Each of those bearer notes in turn is secured by a collateral mortgage executed on the same date as the bearer note that it secures. One of those collateral mortgages, dated April 19, 2007, securing a bearer note of the same date in the principal amount of $4,000,000.00, and recorded in the mortgage records of East Baton Rouge Parish, Louisiana on April 26, 2007 at Orig. 347, Bundle 11944 (the "April 2007 Mortgage"), encumbers, among other property, a 169.45 acre tract of unimproved land in East Baton Rouge Parish known as the Mills Tract. A copy of the April 2007 Mortgage, as recorded, together with the corresponding bearer note and security agreements, is attached as Exhibit 4.

9.

The two loans represented by the Notes are subject to participation agreements entered into by Highlands as follows:

| Community Bank of Lafourche (now United Community Bank) | 29.86501 % |
|---|---|
| First National Bankers Bank | 47.784016% |
| Plaquemine Bank & Trust Company | 4.927727% |
| TOTAL | 82.576753% |

Highlands retained just under 17.5% of the two loans for its own account. Copies of the participation agreements are attached as Exhibits 5-A through 5-F.

10.

On October 27, 2015, W Resources executed a multiple indebtedness mortgage in favor of NCC Financial, LLC in the maximum amount of $50,000,000.00 (the "NCC Mortgage"). Among the immovable property allegedly encumbered by the NCC Mortgage is the Mills Tract. A copy of the NCC Mortgage, which was recorded in the mortgage records of East Baton Rouge Parish on October 29, 2015 at Orig. 934, Bundle 12691, is attached as Exhibit 6.

**B.     The December 1, 2017 Merger of Investar Bank and Highlands, As Well As of Their Holding Companies**

11.

At all relevant times until December 1, 2017, Highlands was a wholly owned subsidiary of BOJ Bancshares, Inc ("BOJ"), a corporation organized under the laws of the State of Louisiana.

12.

At all relevant times, Investar Bank was, and it remains, a wholly owned subsidiary of Investar Holding Corporation ("Investar Holding"), a corporation organized under the laws of the State of Louisiana.

13.

At some point before December 1, 2017, Investar Interim Corporation ("Investar Interim"), was organized under the laws of the State of Louisiana as another wholly owned subsidiary of Investar Holding Corporation.

14.

On December 1, 2017, the following transactions took place:

A.     Effective at 12:01 a.m. on December 1, 2017, BOJ was merged with and into Investar Interim, with the latter being the surviving entity.

B.      Effective at 12:02 a.m. on December 1, 2017, Investar Interim was merged into Investar Holding, with the latter being the surviving entity.

C.      Effective at 12:03 a.m. on December 1, 2017, Highlands was merged into Investar Bank, with Investar Bank being the surviving entity.

Copies of the merger certificates for each of these transactions are attached as Exhibits 7-A through 7-C.

15.

When BOJ merged into Investar Interim, all property owned by and any contract rights possessed by BOJ, as well as all of the liabilities of BOJ, became vested in Investar Interim by operation of law under La. R.S. § 12:1-1107(A)(3) and (A)(4).  Similarly, all of Investar Interim's property and contract rights, as well as all of Investar Interim's liabilities, vested in Investar Holding by operation of law when their merger became effective a minute later.  In particular, as of 12:02 a.m. on December 1, 2017, Investar Holding became the owner, by operation of law, of all of the outstanding stock in Highlands.

16.

Pursuant to La. R.S. § 6:355, the merger of Highlands into Investar Bank one minute later, which combined what by then were two wholly owned subsidiaries of Investar Holding, vested all of Highlands' property and contract rights in Investar Bank by operation of law, as well as making Investar Bank responsible by operation of law for all the liabilities and obligations of Highlands.

C.     **The StarNet Policy Issued to BOJ**

17.

StarNet issued a Management Liability Insurance Policy, policy number MLP 6021365-11 (the "Policy"), to BOJ with a policy period extending from 12:01 a.m. on December 15, 2014 to 12:01 a.m. on December 15, 2017. The Policy was written on a claims made basis for claims first made "during the Policy Period, the Automatic Reporting Period or, if exercised, the Additional Extended Reporting Period." A copy of the StarNet policy is attached as Exhibit 8.

18.

StarNet subsequently issued an Extended Reporting Period Endorsement effective on December 1, 2017, extending coverage under the Policy for claims made during the extended reporting period of 12:01 a.m. on December 1, 2017 to 12:01 a.m. on December 1, 2023, but only with respect to any wrongful act otherwise covered under the Policy taking place prior to December 1, 2017. A copy of the Extended Reporting Period Endorsement, including the related declarations sheet, is attached as Exhibit 9.

19.

Among the insuring agreements contained in the StarNet policy is one for "Company Lender Liability," providing in relevant part as follows:

> The insurer shall pay on behalf of the company…loss which the company…become[s] legally obligated to pay as a result of any claim first made against [it]…during the policy period…or, if exercised, the Extended Reporting Period for a lending act taking place after the retroactive date, if any.

The policy does not include a retroactive date.

20.

The term "company" is defined in the Policy and its declarations to include BOJ and its subsidiaries. Further, the term "lending act" is defined in the Policy to include, among other things, "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by a director, officer, employee, or the company, in connection with or relating to…loan servicing, including the servicing of loans for others under a contract or agreement…."

21.

Under an endorsement issued as part of the Policy, it is the duty of the insureds to select defense counsel, subject to the approval of StarNet, and to defend any claim covered under the Policy, but StarNet is required to advance, on behalf of the insureds, defense expenses that the insureds have incurred in connection with covered claims made against them.

22.

The Policy has a specific provision, entitled Cessation of Business or Reorganization, that addresses the effect of a merger involving a "parent company," BOJ being the "parent company" as that term is defined in the Policy. The merger provision states in relevant part:

> If during the policy period the parent company [BOJ] merges into or consolidates with another entity and the parent company is not the surviving entity, …then coverage under this policy shall continue until the end of the policy year in which such event as described above took place, but only for claims made for wrongful acts that occurred prior to such event. This policy shall be deemed cancelled as of the end of the policy year in which such event as described above took place, and the company and insured persons shall have the right to purchase an extended reporting period.

23.

Pursuant to its right to do so under the Cessation of Business or Reorganization provision of the Policy, Investar Holding, as successor by merger to BOJ, purchased the Extended Reporting Period Endorsement described above at paragraph 18.

D.  **Claim Against Investar Bank by The Loan Participants and StarNet's Denial of Coverage For That Claim**

24.

On February 20, 2018, the three participating lenders (the "Participants") sent a letter to Investar Bank asserting, among other things, that Investar Bank's predecessor, Highlands, had failed to reinscribe the April 2007 Mortgage in a timely fashion and that the NCC Mortgage had therefore become a first mortgage with respect to the Mills Tract, with the April 2007 Mortgage, relegated to the status of a second mortgage.  The Participants further asserted that Highlands' failure to reinscribe the April 2007 Mortgage in a timely fashion--that is, by April 26, 2017--constituted a breach of duties owed to the Participants and likely would lead to a substantial loss to the Participants upon the sale of the Mills Tract, estimated at $1,300,000.00, for which Investar Bank would be legally responsible.  The Participants demanded that Investar Bank immediately repurchase their participations, or, in the alternative, guarantee that the Participants would receive the full amount from the sale of the Mills Tract (referred to in the Participants' letter as the "Zachary Property") that they would have received but for the reinscription error.  A copy of the February 20, 2018 letter from the Participants is attached as Exhibit 10.

25.

Thomas W. Chiasson, Executive Vice-President of Investar Bank, notified StarNet by correspondence dated March 15, 2018 of the claim asserted against Investar Bank by the Participants in their letter of February 20, 2018.  StarNet acknowledged receipt of the notice of

claim by correspondence dated March 19, 2018. Copies of the March 15, 2018 notice letter and the March 19, 2018 acknowledgement of receipt are attached as Exhibits 11 and 12.

26.

In correspondence dated March 30, 2018, Megan M. Manogue, writing on behalf of StarNet, asserted that the February 20, 2018 letter from the Participants did not constitute a "claim" as that term is defined in the Policy. Manogue's March 30 letter did not otherwise take any position concerning coverage for the matters alleged in the Participants' letter. A copy of the March 30, 2018 letter is attached as Exhibit 13.

27.

Investar Bank responded to Manogue's March 30, 2018 letter via correspondence from its counsel dated May 3, 2018. That correspondence provided extensive detail concerning the factual underpinnings of the dispute between Investar Bank and the Participants and asserted that in light of that factual background, StarNet's position regarding whether the Participants had made a claim against Investar Bank was incorrect. A copy of the May 3, 2018 letter (without the exhibits originally attached to that letter) is attached as Exhibit 14.

28.

StarNet responded on May 8, 2018 to the May 3, 2018 letter from Investar Bank's counsel. StarNet's letter, written by Kurt C. Schultheis, to whom the claim had been reassigned within StarNet appeared to abandon the portion articulated in Manogue's March 30, 2018 letter that the Participants had not asserted a clam against Investar Bank. Instead, Schultheis asserted for the first time that Investar Bank was not an insured under the Policy and that coverage for the claim that Investar Bank had submitted was being denied by StarNet on that basis. The correspondence from Mr. Schultheis reserved StarNet's rights concerning whether any amounts

for which Investar Bank might be liable to the Participants for the matters asserted in the Participants' February 20, 2018 letter would fall within the Policy's definition of "loss." A copy of the May 8, 2018 letter is attached as Exhibit 15.

29.

Via correspondence dated May 16, 2018, counsel for Investar Bank provided Schultheis with information concerning the merger transactions consummated on December 1, 2017 and requested that Schultheis, in light of that information, reconsider his position regarding whether Investar Bank is an insured under the StarNet policy for liabilities it inherited from Highlands by virtue of the merger of those two banks. As to whether any damages that might be due by Investar Bank to the Participants relating to the reinscription of the April 2007 Mortgage would constitute "loss" under the Policy, the May 16, 2018 letter noted an apparent disagreement between Investar Bank and StarNet but did not address the issue further. A copy of the May 16, 2018 letter is attached as Exhibit 16.

30.

Schultheis responded by correspondence dated May 29, 2018 in which he that reaffirmed StarNet's denial of coverage, reiterating his contention that, notwithstanding the December 1, 2017 mergers, Investar Bank is not a "company" as that term is defined in the Policy. With respect to whether the Participants' monetary claims against Investar Bank satisfy the Policy's definition of "loss," StarNet continued to reserve its rights.

**E.    The W Resources Bankruptcy**

31.

W Resources filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Louisiana on July 23, 2018.

Accordingly, all issues concerning the relative priority of the 2007 Mortgage and the NCC Mortgage with respect to the Mills Tract, the primary subject of the claim by the Participants against Investar bank will now be determined by the bankruptcy court.

32.

W Resources, as debtor-in-possession, has filed an adversary proceeding in the bankruptcy court against NCC asserting that W Resources has no obligations or liabilities due to NCC and that NCC's Mortgage, which secures only obligations or liabilities due by W Resources to NCC, therefore secures nothing.

33.

Should W Resources succeed in obtaining the relief it has prayed for in the adversary proceeding against NCC, then any loss of priority due to the alleged failure by Highlands to reinscribe the April 2007 Mortgage in a timely fashion would become moot, in that no loss would result from the untimely reinscription. Investar Bank's bankruptcy counsel therefore already has expended considerable effort to support the debtor-in-possession's efforts to disallow NCC's bankruptcy claim, and Investar Bank intends to intervene in the adversary proceeding both to support the position of the debtor-in-possession and to assert certain related claims of its own related to the NCC Mortgage.

34.

Because StarNet has denied coverage to Investar Bank for the claim asserted by the Participants, StarNet is not advancing any of the litigation expenses that Investar Bank has incurred and will continue to incur in its efforts to protect Investar Bank from any loss related to the Participants' claim. In addition, StarNet has made clear that to the extent that Investar Bank may have any liability for damages to the Participants arising from the allegedly untimely

reinscription of the April 2007 Mortgage, it will refuse to pay for those damages and will instead adhere to its denial of coverage.

### III.     CLAIMS FOR RELIEF

#### Count 1

**Declaratory Judgment Regarding Coverage and Duty to Defend Under the StarNet Policy**

35.

StarNet's has denied coverage to Investar Bank for the claim asserted against it by the Participants solely because in StarNet's view and notwithstanding the various mergers described above in paragraph 14 and the legal effect of those mergers, Investar Bank is not an insured under the Policy.

36.

Immediately prior to the merger of Highlands into Investar Bank at 12:03 a.m. on December 1, 2017, both banks were wholly owned subsidiaries of Investar Holding, the ultimate successor-by-merger to BOJ, the named insured under the Policy and the "parent company" as that term is defined in the Policy. Accordingly, as of 12:03 a.m. on December 1, 2017, Highlands was an insured under the Policy in light of its Cessation of Business or Reorganization provisions, but only for claims made with respect to wrongful acts occurring prior to the BOJ-Investar Interim-Investar Holding sequence of mergers.

37.

When Highlands merged into Investar Bank, Investar Bank succeeded by operation of law to all the assets and liabilities of Highlands. In particular, Investar Bank succeeded

(a)     to the claim by the Participants that Highlands had failed to reinscribe the April 2007 Mortgage in a timely fashion – i.e., by April 26, 2007; and

(b) to Highlands' rights as an insured under the Policy for any claim made against it during the Extended Reporting Period with respect to wrongful acts occurring prior to the December 1, 2017 sequence of mergers, including in particular the Participants' claim for failure to timely reinscribe the April 2007 Mortgage.

38.

StarNet's denial of coverage under the Policy for the claim made by the Participants with respect to the April 2007 Mortgage is a breach of its obligations under the Policy, including, but not limited to StarNet's obligations with respect to the defense of that claim.

39.

Investar Bank is entitled to a declaration from the Court that the Participants' claim with respect to the reinscription of the April 2007 Mortgage is covered under the Policy and that StarNet has an obligation under the Policy to advance, on behalf of Investar Bank, defense expenses that Investar Bank has incurred and will continue to incur in connection with that claim.

## Count 2

### Bad Faith Denial of Coverage
### Under La. Rev. Stat. Ann. §§9:1892 and 9:1973

40.

StarNet owes a duty to Investar Bank of good faith and fair dealing, as articulated in La. Rev. Stat. Ann. §§9:1892 and 9:1973.

41.

StarNet's denial of coverage to Investar Bank was arbitrary, capricious, and without probable cause, finding no support in the language, intent, or purpose of the policy.

42.

Accordingly, Investar Bank is entitled to recover from StarNet all damages that it has incurred as a result of StarNet's breach of its duty of good faith and fair dealing, together with all penalties authorized under in La. Rev. Stat. Ann. §§9:1892 and 9:1973.

WHEREFORE, plaintiff, Investar Bank, prays that this Complaint be duly served upon defendant, StarNet Insurance Co., and that after due proceedings are had, there be judgment in favor of plaintiff and against defendant as follows:

(a) Declaring

(i) that the claim made by the Participants against Investar Bank with respect to the reinscription of the April 2007 Mortgage is covered under the StarNet Policy, and

(ii) that StarNet has an obligation under the Policy to advance, on behalf of Investar Bank, defense expenses that Investar Bank has incurred and will continue to incur in connection with that claim;

(b) Awarding damages and penalties to Investar Bank pursuant to La. Rev. Stat. Ann. §§9:1892 and 9:1973 for StarNet's breach of its duty of good faith and fair dealing; and

(c) For all such other and further relief as is just and equitable.

        **Respectfully submitted,**

        **STEEG LAW, LLC**


           /s/ Charles L. Stern, Jr.
        **CHARLES L. STERN, JR. (12451)**
        **RYAN M. McCABE (31254)**
        **Steeg Law Firm, LLC**
        **201 St. Charles Avenue; Suite 3201**
        **New Orleans, Louisiana 70170**
        **Telephone: (504) 582-1199**
        **Facsimile: (504) 582-1240**
        **E-mail: cstern@steeglaw.com**

        **Attorneys for Investar Bank**